OVERTON, J.
Plaintiffs instituted this suit to have themselves declared the owners of the mineral, oil, and gas, arid the. mineral oil, and gas rights in and to the following described lands situated in the parish of Claiborne, "to wit:
All that part of the N. E. % of N. E. %. Sec. 1, T. 20, R. 8; and all that part of S. E. !4 Sec. 36, T. 21, R. 8, lying west of the I-Iaynesville and Taylor road; and the S. IV. % of S. E. % Sec. 23, T. 21, R. 8
—and to have themselves recognized as possessing the exclusive right to explore the said lands for oil and gas; and to have declared forfeited and canceled, in so far as it affects the above described lands, an oil lease granted by G. T. Shaw to A. E. Wilder, and now claimed by defendant as owner; and to recover $10,000 damages for slander of plaintiffs’ title.
Plaintiffs obtained the lease upon which they, rely on January 19, 1919, from Johnny White and Willie B. White, who were its grantors. Johnny White acquired the first two • tracts of land from G. T. Shaw by deed dated October IS, 1916, and filed for record on the same day. Willie B. White acquired the last tract, described in the preceding paragraph, from Shaw, on January 6, 1917, by deed duly filed for record on the following day. Both deeds were duly recorded. In neither was there any exception or reservation as to mineral rights or privileges.
Defendant acquired its oil and mineral lease by assignment from G. W. Williams and T. F. Denman, which assignment was filed for record on April 17, 1918. Williams and Denman acquired it in the same manner from the Atlas Oil Company. The assignment to them was filed for record October 7, 1918. The Atlas Oil Company acquired it by assignment from A. E. Wilder, which assignment was filed for record on January 29, 1917. Wilder acquired the lease from Shaw, who at that time was the owner of the land, and who granted Wilder an oil and gas lease, on October 4, 1916, and which was filed for record and recorded on the day of its execution.
As defendant traces its title to Shaw — ■ that' is, to the lease granted by Shaw to Wilder — and as plaintiffs obtained their lease from the Whites, who bought the land from Shaw, and as defendant’s lease was in force and of record against the land at the time the Whites purchased the land from Shaw, plaintiffs are dependent upon annulling, or having declared forfeited, the lease granted by Shaw to Wilder, in order that they may explore the land for oil and other 'minerals.
This, plaintiffs have undertaken to do. They allege that the lease from Shaw to Wilder provides that the lessee, o¡r his assigns, shall begin drilling a well for oil oi-gas upon the land in question, or upon other leased premises, within five miles of the town of Homer, within six months from the date of the lease, and shall prosecute the drilling until the well reaches a depth of 2,600 feet, unless oil or gas should be discovered at a less depth, in paying quantities. They admit a compliance with this provision *833 by conceding that the required well was drilled within five, miles of Ilomer by one of the assignees within the required time, but aver that no oil or gas was found, which failure appears to be a fact.
Plaintiffs, however, allege that the • contract attacked by them provides further, that, on the completion of the well mentioned above, the lessee or his assigns shall begin drilling a well for oil or gas upon the land in question, within one year, and shall diligently prosecute the drilling to the depth stipulated for the first well, which depth is stated above, and upon his failure to do so that all of his rights under the contract shall cease.
Plaintiffs also allege that the contract provides that the lessee might prevent the forfeiture of the lease at the expiration of the one-year period by paying $1 per acre, which would extend the period one year, for beginning to drill a well.
Plaintiffs then allege that the stipulation in the contract to drill the well, on the land in question, beginning one year after, the completion of the first well, which was drilled on other premises, has never been complied with, nor has the $1 an acre been paid to prevent the forfeiture of the contract, and that, as a consequence, the contract has been forfeited.
Plaintiffs further allege that notwithstanding the contract had been forfeited, and notwithstanding Shaw had sold the land in question, yet on May 16, 191S, Shaw granted an extension to January 1, 1919, for the payment of the $1 an acre provided by the contract, to prevent a forfeiture. This extension, plaintiff alleges is null and void for the reason that Shaw had long before parted with the land and could not burden it.
The defendant denies that the contract has been forfeited by failure to comply with its conditions. It avers- that it has- complied with them either by boring the well, or by paying for a delay; that whether said payments were made or not within the timé specified, they were satisfactorily arranged with its lessor; that defendant was under no obligations to ascertain whether any transfer had been made by its lessor; that it has expended large sums of money in the development of the oil field in the territory in which the contract provided that wells •should be drilled, with the acquiescence of plaintiffs, the Whites, and Shaw, all of whom knew at the time that defendant was claiming the lease on the property in question.
The lease, which is in evidence, shows that it contains the provisions that plaintiffs allege that it does. It is admitted by the parties to the suit that the first well, the drilling of which was provided for by the contract attacked, was drilled by the Atlas Oil Company to a depth of 2,600 feet, and was abandoned on March 27, ¡1917, and that all wells drilled by the defendant were drilled after that time on land covered by other leases, and not on the land which the lease in question affects; that no well has been drilled on that land, that defendant has drilled three wells in the Homer Oil Eield, one of which has produced some oil. It is also admitted that A. E. Wilder drew a draft on defendant on January 1, 1919, covering rentals on the land in controversy, with other land, and delivered it to the Ilomer National Bank for collection; that this draft was forwarded by the bank to defendant at New York; that it was returned unpaid; that it was received by the Homer National Bank when returned, on January 17,' 1919, upon which day defendant sent the money by telegraph to pay the draft; that Shaw, in whose favor it was drawn, called at the bank, a day or two afterwards, received the money, and paid $100 to the Whites, the owners of the land in controversy. - ■ • ■ ■ • ;
*835 The trial resulted in a judgment for plaintiffs, recognizing them as the owners of the mineral rights in the land in question, and decreeing the forfeiture of the lease attacked, and ordering it canceled in so far as it 'affects- that land. Defendant has ap>pealed.
Opinion.
While, the contract attacked provides that the first well might be drilled on other land under lease than that in controversy, yet it also provides that one year after the completion of that well the lessee or his assigns shall begin drilling and prosecute diligently to completion, in accordance with the terms of the contract, a well on the land in question, or else the lease shall cease to exist, unless the lessee or his assigns should continue it in force by the payment of $1 an acre a year. As the first well mentioned was drilled to the required depth, and then abandoned ón March 27, 1917, it then became the duty of the lessee or its assigns to do one of two things, either to begin drilling the well on the property in controversy one year from that date, and prosecute the work to •completion, or to pay the $1 an acre, stipulated in the contract. As the first of the two obligations stated in the alternative, was not complied with, the next question is: Was there a compliance with the second?
Instead of making the payment at the end of the year, which the contract required should be made in advance, the defendant permitted the time fixed to pass without doing so, and as a result no payment was then made. Hence, according to its terms, the contract itself ceased to exist unless the extension granted by Shaw, the original lessor, on May 16, 1918, saved the contract from forfeiture.
[1] However, on that date Shaw was not the owner of the land. The Whites, the lessors of the plaintiffs, were the owners of record and had been for some time. The effect of the extension was to add to the burden on the property. Its effect was the same as the granting of a new contract, especially as the contract had ceased to exist, -when the extension was granted. One cannot grant a lease on property of which he is not the owner, nor alter the terms of a lease granted by him when he was the owner after he has ceased to be such. Hence the extension was without legal effect, and the lease remained forfeited.
For the same reason, when defendant sent the money to the bank, with which to make the payment on the land in question, and on other land, 17 days after the expiration of the extension, and Shaw went to the bank and received the money, the fact that he received it did not remedy the matter,' for he was not then the owner of the land.
[2] The fact that Shaw, after receiving the money, paid to the Whites, the owners of the land, the ?1 an acre stipulated in the contract for an extension did not have the effect of ratifying what Shaw had done, or of granting an extension, to the prejudice of the lease granted by the Whites to plaintiffs, which lease, prior to such payment, had been granted and recorded. To hold otherwise would be to permit one party to a-contract to abrogate it at will, for if the receipt of the money by- the Whites should be given the- effect of extending defendant’s contract, then plaintiffs’ contract, which was granted by them, would be worthless, for ■the two contracts conflict and plaintiffs’ is the later.
In so far as respects the estoppel urged in defendant’s answer, that plaintiffs cannot be heard to question the extension granted it, because they knew that defendant was developing other property under other leases, in the Homer field, and was claiming the right to explore the land in controversy under the lease attacked, this estoppel is not supported by the evidence, if it has any merit at all. The fact that defendant was *837 developing other property, under other leases, was not inconsistent with the abandonment of the lease on the property in question, which was only a small part of the lands that defendant had under lease. The evidence does not make it appear that plaintiffs had knowledge that defendant still was claiming under the lease until the suit was filed, nor does it even make it appear that the Whites knew of such continued claim until they received the money for the extension. Under these circumstances, it is needless to consider the estoppel further.
Eor the reasons ■ assigned, the judgment appealed from is affirmed, at apipellant’s costs.